IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

SHERRI HENDERSON,

    PLAINTIFF,

V.

HARLAND CLARKE CORP.
d/b/a NCP SOLUTIONS,

    DEFENDANT.

CIVIL ACTION NO.:

JURY TRIAL DEMANDED

## COMPLAINT

**I. JURISDICTION**

1. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(4), 28 U.S.C. §§ 2201 and 2202, 42 U.S.C. § 2000e *et seq*. This suit is authorized and instituted pursuant to Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, the "Civil Rights Act of 1991;" 42 U.S.C. § 2000e, *et seq.* (Title VII). The jurisdiction of this Court is invoked pursuant to the Equal Pay Act of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201, 206, *et seq.*. District Court jurisdiction exists pursuant to 29 U.S.C. §§ 216(b) and 217 and 28 U.S.C. § 1331. The jurisdiction of this Court is invoked to secure protection of and to redress deprivation of rights secured by the Equal Pay Act and Title VII providing for injunctive and other relief against sex discrimination.

2. Plaintiff timely filed her charge of discrimination with the Equal Employment Opportunity Commission (EEOC) within 180 days of the last discriminatory act (Exhibit A). Plaintiff further filed this lawsuit within ninety (90) days after receipt of the right-to-sue letter issued by the EEOC (Exhibit B).

**II. PARTIES**

3. Plaintiff, Sherri Henderson, (hereinafter "Plaintiff") is a citizen of the United States, and a resident of Sterrett, Shelby County, Alabama. Plaintiff was formerly employed by Defendant.

4. Defendant, Harland Clarke Corp. d/b/a NCP Solutions (hereinafter "Defendant") is registered and doing business in the State of Alabama and is an entity subject to suit under Title VII. Defendant employs at least fifteen (15) persons.

## III. STATEMENT OF THE FACTS

5. Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1 through 4 above.

6. Defendant hired Plaintiff on or about November 16, 2015.

7. Defendant employed Plaintiff at its business location found at 5200 East Lake Boulevard, Birmingham, Alabama.

8. Defendant employed Plaintiff in the position of IT Programming Manager.

9. At all times while employed with Defendant, Plaintiff performed her job duties in a competent or better manner.

10. Defendant terminated Plaintiff on September 15, 2016.

11. Shortly after Defendant terminated Plaintiff's employment, Defendant placed a man in Plaintiff's former position.

12. At or about the same time that Defendant hired Plaintiff, Defendant hired another IT Manager, Nathan Thompson

13. Nathan Thompson is a male.

14. Ben Rayasam hired Plaintiff.

15. Rayasam hired Nathan Thompson.

16. Despite the fact that Plaintiff's experience and qualifications and assigned job duties in her new position with Defendant were greater than those of Thompson, Defendant paid Thompson $23,000 more than Plaintiff.

17. Both Thompson and Plaintiff used the same headhunter to apply for the jobs with Defendant.

18. Rayasam agreed to pay Thompson the extra amount while refusing to do so with Plaintiff.

19. Plaintiff learned about the pay difference between herself and Thompson when her boss, Ken Purington, IT Director, told her about the discriminatory pay practice and he said he thought it was unfair.

20. Shortly thereafter Purington began to lobby for Plaintiff to get a raise.

21. After her began lobbying for Plaintiff, Defendant terminated Purington's employment.

22. Defendant replaced Purington with Marty Reilly.

23. Marty Reilly is a male.

24. Plaintiff expressed an interest to Purington, and then Reilly's boss, Andy Crockett, about having an opportunity to apply for the position vacated by Purington.

25. Crockett never responded to Plaintiff.

26. Shortly thereafter, Defendant hired Reilly.

27. Plaintiff's qualifications were superior to those of Reilly, and she also had experience working with Defendant.

28. Despite Plaintiff's superior qualifications, Defendant hired Reilly for the position that Plaintiff sought.

29. Defendant did not even interview Plaintiff for the position.

30. On September 15, 2016, Defendant gave Plaintiff notice of the termination of her employment, effective immediately, based on the false claim that her job was being eliminated.

31. At the time of Defendant terminated Plaintiff's employment, Plaintiff supervised eight employees in Jacksonville, Florida and twelve employees in Birmingham Alabama, for a total of twenty employees under her supervision.

32. Plaintiff also had three full time consultants/contractors in Birmingham that reported to her.

33. Daren Donovan was the former manager of the Jacksonville, Florida location.

34. Donovan voluntarily stepped down in order to perform the work.

35. Because of concerns under Sarbanes Oxley, a manager cannot also perform the work.

36. After Defendant's decision to terminate Plaintiff's employment, Defendant required Donovan to return to his management role.

37. Donovan is a male.

38. After Defendant's decision to terminate Plaintiff's employment, Defendant transferred an unqualified male, Lou Sullivan, to replace her as manager in Birmingham.

39. Thompson submitted a letter of resignation that was critical of Defendant and effective on or about September 15, 2016; but Crockett and other management officials with

Defendant talked Thompson into continuing his employment by giving him a 12% pay raise, and additional responsibilities.

40. Instead of accepting Thompson's resignation, Defendant terminated Plaintiff's employment.

41. Prior to Defendant's decision to terminate Plaintiff's employment, Defendant held an HR meeting earlier in the year in which the representative said that Defendant had objectives for hiring professional women and minorities.

42. Defendant's HR Representative told the group that Plaintiff was counted towards their goal of female hires and that Plaintiff was also counted in order to improve their results, but that the company failed to meet its hiring objectives for 2015.

43. Defendant has engaged in a pattern and practice of failing to hire a representative number of female employees; paying female employees less than male employees for the same work that required equal skill, effort, responsibilities, and working conditions; failing to promote female employees with equal or greater qualifications to male applicants; and, in particular, terminated Plaintiff employment from a job that she was competently performing in order to replace her with a less qualified male.

IV. **COUNT ONE – TITLE VII – SEX –TERMINATION.**

44. Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1 through 43 above.

45. Plaintiff is a female.

46. Defendant hired Plaintiff on or about November 16, 2015.

47. Defendant terminated Plaintiff on September 15, 2016.

48. Defendant replaced Plaintiff with a male.

49. In violation of Title VII, Defendant terminated Plaintiff's employment for the alleged reason of a business re-organization, but Defendant did not terminate the employment of a male employee that resigned on the same day of Plaintiff's termination; instead Defendant offered the resigning male employee more compensation to stay and terminated Plaintiff's employment.

50. In violation of Title VII, Defendant's decision to terminate Plaintiff was, in whole or part, because of her sex.

51. As a result of Defendant's violation of Title VII, Plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

V. COUNT TWO – TITLE VII – FAILURE TO PROMOTE

52. Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1 through 51 above

53. Plaintiff is a female.

54. Defendant hired Plaintiff on or about November 16, 2015.

55. Defendant terminated Purington's employment.

56. Defendant replaced Purington with Marty Reilly.

57. Marty Reilly is a male.

58. Plaintiff expressed an interest to Purington, and then Reilly's boss, Andy Crockett, about having an opportunity to apply for the position vacated by Purington.

59. Crockett never responded to Plaintiff.

60. Shortly thereafter, Defendant hired Reilly.

61. Plaintiff's qualifications were superior to those of Reilly, and she also had experience working with Defendant.

62. Despite Plaintiff's superior qualifications, Defendant hired Reilly for the position that Plaintiff sought.

63. Defendant did not even interview Plaintiff for the position.

64. In violation of Title VII, Defendant's decision to not promote Plaintiff, or even interview Plaintiff, to the open position was, in whole or part, because of her sex.

65. As a result of Defendant's violation of Title VII, Plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

## VI. COUNT THREE – TITLE VII – PAY DISCRIMINATION

66. Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1 through 65 above.

67. Plaintiff is a female.

68. Defendant hired Plaintiff on or about November 16, 2015.

69. At or about the same time that Defendant hired Plaintiff, Defendant hired another IT Manager, Nathan Thompson

70. Nathan Thompson is a male.

71. Ben Rayasam hired Plaintiff.

72. Rayasam hired Nathan Thompson.

73. Despite the fact that Plaintiff's experience and qualifications and assigned job duties in her new position with Defendant were greater than those of Thompson, Defendant paid Thompson $23,000 more than Plaintiff.

74. Both Thompson and Plaintiff used the same headhunter to apply for the jobs with Defendant.

75. Rayasam agreed to pay Thompson the extra amount while refusing to do so with Plaintiff.

76. Plaintiff learned about the pay difference between herself and Thompson when her boss, Ken Purington, IT Director, told her about the discriminatory pay practice and he said he thought it was unfair.

77. Shortly thereafter Purington began to lobby for Plaintiff to get a raise.

78. After he began lobbying for Plaintiff, Defendant terminated Purington's employment.

79. Defendant does not employ a merit system to measure the quantity and quality of production performed by Plaintiff or Thompson.

80. Defendant does not measure the quantity and quality of production performed by Plaintiff or Thompson.

81. The skills, effort, time commitment, experience, and education required to perform Plaintiff's job duties, as well as the results of the performance of those duties, compared to the job duties of similarly situated male co-workers were virtually identical, yet male co-workers, including Thompson, were paid in whole or part substantially more money than was Plaintiff for similar job duties with equal or less results in the performance of those job duties.

82. In violation of Title VII, Defendant's decision to pay Plaintiff less than Thompson was, in whole or part, because of her sex.

83. As a result of Defendant's violation of Title VII, Plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

## VII. COUNT FOUR – TITLE VII – EQUAL PAY ACT

84. Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1 through 83 above.

85. Plaintiff is a female.

86. Defendant hired Plaintiff on or about November 16, 2015.

87. At or about the same time that Defendant hired Plaintiff, Defendant hired another IT Manager, Nathan Thompson

88. Nathan Thompson is a male.

89. Ben Rayasam hired Plaintiff.

90. Rayasam hired Nathan Thompson.

91. Despite the fact that Plaintiff's experience and qualifications and assigned job duties in her new position with Defendant were greater than those of Thompson, Defendant paid Thompson $23,000 more than Plaintiff.

92. Both Thompson and Plaintiff used the same headhunter to apply for the jobs with Defendant.

93. Rayasam agreed to pay Thompson the extra amount while refusing to do so with Plaintiff.

94. Plaintiff learned about the pay difference between herself and Thompson when our boss, Ken Purington, IT Director, told her about the discriminatory pay practice and he said he thought it was unfair.

95. Shortly thereafter Purington began to lobby for Plaintiff to get a raise.

96. After Purington began lobbying for Plaintiff, Defendant terminated Purington's employment.

97. Defendant does not employ a merit system to measure the quantity and quality of production performed by Plaintiff or Thompson.

98. Defendant does not measure the quantity and quality of production performed by Plaintiff or Thompson.

99. The skills, effort, time commitment, experience, and education required to perform Plaintiff's job duties, as well as the results of the performance of those duties, compared to the job duties of similarly situated male co-workers were virtually identical, yet male co-workers, including Thompson, were paid in whole or part substantially more money than was Plaintiff for similar job duties with equal or less results in the performance of those job duties.

100. In violation of the Equal Pay Act, Defendant's decision to pay Plaintiff less than Thompson was, in whole or part, because of her sex.

101. As a result of Defendant's violation of Equal Pay Act, Plaintiff has been damaged, suffering loss of pay.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

A. Issue a declaratory judgment that the employment policies, practices, procedures, conditions and customs of the Defendant are violative of the rights of the Plaintiff as secured by Title VII and the Equal Pay Act.

B.  Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting in concert with Defendant's request from continuing to violate Title VII and the Equal Pay Act.

C.  Award Plaintiff the difference in her wages as compared to her male counterparts and an equal amount for liquidated damages (as permitted by 29 U.S.C. § 201 *et seq*);

D.  Enter an Order requiring Defendant to make Plaintiff whole by awarding her front-pay, back pay (plus interest) compensatory damages, punitive damages, special damages, and/or nominal damages, injunctive and declaratory relief, and benefits.

E.  Plaintiff further prays for such other relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorneys' fees and expenses.

_____
Allen D. Arnold

_____
Kira Fonteneau

OF COUNSEL:
FONTENEAU & ARNOLD, LLC
2151 Highland Avenue South, Ste. 205
Birmingham, AL 35205
T: 205.252.1550 F: 205.502.4476

**PLEASE SERVE DEFENDANT(S) AT:**
Harland Clarke Corp.
d/b/a NCP Soultions
5200 East Lake Blvd.
Birmingham, AL 35217

PLAINTIFF DEMANDS TRIAL BY STRUCK JURY

_/s/ Kim Pratt_____